**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| LIFE UNIVERSITY, INC. | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:13-cv-01741-SCJ |
| | ) | |
| v. | ) | |
| | ) | |
| BRAIN SYNERGY INSTITUTE, LLC, | ) | |
| KBCR, LLC and CARRICK BRAIN | ) | |
| CENTERS, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANTS' REPLY IN SUPPORT OF ITS MOTION TO DISMISS FOR**
**LACK OF PERSONAL JURISDICTION**

## I.   INTRODUCTION

It is well settled that the types of activities Plaintiff Life University, Inc. ("Life U") relies upon in its Opposition – alone or in combination – do not satisfy Georgia's long-arm statute or comport with federal due process.

First, Georgia's long-arm statute requires that the cause of action arise from or be connected with the purported business transactions in the State.  Here, Life U seeks declaratory judgments of patent non-infringement and invalidity, which do not arise from BSI's cited contacts with Georgia.  Life U has not established how the limited preparations that BSI has taken to conduct business through its subsidiary are related to this Declaratory Judgment action.  Because BSI does not "transact business" as required by the Georgia long-arm statute, personal jurisdiction is lacking and BSI's Motion may be granted on this basis alone.

Second, an analysis of the federal Due Process requirements for personal jurisdiction leads to the same outcome.  Foremost, Life U relies heavily on speculation to concoct a list of BSI's alleged activities in this forum.  However, even accepting these speculations as true, general jurisdiction is clearly lacking given the heavy burden that Life U must meet to show continuous and systematic contacts in Georgia.

For specific jurisdiction, Life U's analysis largely ignores the controlling Federal Circuit test in the context of declaratory judgment actions, which requires

1

examination of a patentee's enforcement activities, not its commercial activities. Here, Life U has not identified *any* patent enforcement activities in Georgia outside of BSI's delivery of a single cease and desist letter. Again, BSI has never sued a Georgia resident for patent infringement, nor has it ever licensed the '062 patent to a Georgia resident.

For all these reasons, as more fully explained below and in BSI's opening brief, the Court lacks personal jurisdiction over BSI, and this case should be dismissed.

## II.   LIFE U SEEKS DECLARATORY RELIEF THAT DOES NOT ARISE FROM AND IS NOT RELATED TO BSI'S PURPORTED BUSINESS TRANSACTIONS IN GEORGIA

### A.   The Transacted Business Must Relate to the Underlying Claim

Life U misapplies the "transacting business" prong of the Georgia long-arm statute. As BSI noted in its opening Motion, the statute explicitly requires a connection between the cause of action and the business transacted in the State. Motion at 17. Here, Life U improperly argues that any business in Georgia, regardless of its relationship to the cause of action, is enough. This is plainly contrary to the statute and relevant case law.

Specific jurisdiction exists under the "transacting business" prong of the Georgia long-arm statute if "(1) the nonresident defendant has purposefully done some act or consummated some transaction in [Georgia], (2) *the cause of action*

2

*arises from or is connected with such act or transaction*, and (3) the exercise of jurisdiction . . . does not offend traditional fairness and substantial justice." *John Gallup & Assocs., LLC v. Conlow,* No. 1:12-CV-03779-RWS, 2013 U.S. Dist. LEXIS 87177, at *13  (N.D. Ga. June 21, 2013) (quoting *Aero Toy Store, LLC v. Grieves*, 279 Ga. App. 515, 631 S.E.2d 734, 737 (Ga. App. 2006) (emphasis added).

District courts have repeatedly declined to extend the Georgia long-arm to causes of action that do not relate to the nonresident's contacts with the State.  In *Wells Fargo Bank v. Berkman,* No. 1:10-CV-2286-TWT, 2011 U.S. Dist. LEXIS 16484, at *10-11 (N.D. Ga. Feb. 16, 2011), defendant's Georgia transactions assigning interests in real estate developments were unrelated to the breach of contract action for outstanding indebtedness to Wells Fargo Bank, and the case was dismissed for lack of personal jurisdiction.  Similarly, in *James River Insurance Co. v. Kannon & Kannon Insurance, Inc.,* No. CV0410-062, 2010 U.S. Dist. LEXIS 120287, at *11-12 (S.D. Ga. Nov. 12, 2010), the action for declaratory relief concerned the scope of coverage for an insurance policy, which was unrelated to defendants' business contacts with the State, such as traveling to Georgia to purchase trailers.  *See also John Gallup,* 2013 U.S. Dist. LEXIS 87177, at *18.

Life U's argument that *any* business contact between BSI and this forum satisfies Georgia's long-arm statute is wrong as a matter of law. For the reasons described below, Life U's cause of action does not arise from and is not connected with BSI's purported activities in Georgia.

### B.   BSI's "Business Transactions" in Georgia

#### 1.   The Crossfields Architectural Agreement

As Life U itself acknowledges, the agreement between BSI and Crossfields relates to "architectural, interior design, furniture & engineering services" at a proposed new clinic in Marietta. Motion at 8. Life U's claim for declaratory relief, in contrast, arises out of BSI's allegations of patent infringement by Life U, which is not at all connected with the agreement for architectural services. Plainly, the Crossfields agreement does not provide a basis for this Court to exercise personal jurisdiction over BSI under the "transacting business" prong of the Georgia long-arm statute. *See Wells Fargo,* 2011 U.S. Dist. LEXIS 16484, at *10-11; *James River,* 2010 U.S. Dist. LEXIS 120287, at *11-12; *John Gallup,* 2013 U.S. Dist. LEXIS 87177, at *18.

All five of the cases Life U relies upon are distinguishable because they involve causes of action that arise from or are connected with the nonresident's

contacts with the State. [1]  In *Kolodziej v. Mason,* No. 1:10-CV-2012-JEC, 2011 U.S. Dist. LEXIS 54562 (N.D. Ga. May 20, 2011), plaintiff sued nonresident defendant for breach of contract where the contract was offered, accepted, and performed in Georgia.  Similarly in *ATCO Sign & Lighting Co., LLC v. Stamm. Mfg., Inc.,* 680 S.E.2d 571 (Ga. App. 2009), plaintiff properly sued a salesman and corporation in Georgia alleging claims of trespass, interference, conversion, misrepresentation, and negligent entrustment for actions in Georgia.  In *Diamond Crystal Brands, Inc. v. Food Movers, Int'l, Inc.,* 593 F.3d 1249 (11th Cir. 2010), plaintiff sued defendant alleging nonpayment for two shipments of product.  The Court explicitly found that plaintiff's "*cause of action* grew out of [defendant's] purposeful contact with Georgia", *id.* at 1267, and also explained:

> Food Movers sent purchase orders to Diamond Crystal in Georgia, Food Movers requested delivery by 'customer pickup' at Diamond Crystal's plant in Savannah, Food Movers directed third parties to accept delivery of the goods in Savannah, Food Movers took legal title to the goods in Georgia, and Food Movers promised to pay money into Georgia *on the two transactions in question*.

---

[1] Life U also inexplicably relies on two cases where the actions were *dismissed* for lack of personal jurisdiction.  In *Canty v. Fry's Elecs., Inc.,* 736 F. Supp. 2d 1352, 1360 (N.D. Ga. 2010), the nonresident defendant did not fall within the reach of Georgia's long-arm statute because it did no business in Georgia. Likewise, in *Marival, Inc. v. Planes, Inc.,* 302 F. Supp. 201, 211 (N.D. Ga. 1969), "almost all of [defendant's] activities involving negotiation and performance of the contract and warranties occurred outside the forum state," resulting in dismissal.

*Id.* at 1266-67 (emphasis added).  Life U's two other cases equally recognize that the cause of action must arise from contacts in the State.  *See Genesis Research Inst., Inc. v. Roxbury Press, Inc.,* 542 S.E.2d 637, 639 (Ga. App. 2000) (in breach of contract action the "negotiation of the terms of [the] agreement [were] within the confines of the State of Georgia"); *Southwire Co. v. Trans-World Metals, & Co.,* 735 F.2d 440, 445 (11th Cir. 1984) ("cause of action is sufficiently connected with [the] negotiation and solicitation [in Georgia] to confer jurisdiction").

Life U's final argument with respect to the Crossfields agreement -- that BSI deemed itself a Georgia resident -- is unavailing.  Foremost, the agreement explicitly cites BSI's *Texas address*.  *See* Ex. C to Motion, at 5 (Doc. 8-5).  The reference to "residents of Georgia" exists in the "choice of law" provision within the boilerplate of Crossfields' standard contract.  *See* Ex. C to Motion, at 5 (Doc. 8-5).  If the instant action arose out of or was connected to the Crossfields agreement, then Life U's position might have merit.  But because the instant dispute plainly is unrelated to the Crossfields agreement, BSI's consent to Georgia law *in that agreement* is insufficient to confer specific jurisdiction for this unrelated action.

In short, because Life U's Complaint for declaratory relief does not arise from the Crossfields agreement, it is irrelevant to the Georgia long-arm or specific

jurisdiction analysis.  Moreover, because the Crossfields agreement is a single

agreement and the *only agreement* occurring prior to Life U's filing of its

Complaint, it cannot possibly constitute "continuous and systematic" contacts

sufficient to confer general jurisdiction.

### 2.      BSI'S Relationship with Former Life U Employees

Life U's lengthy narrative regarding Drs. Carrick and Antonucci's

employment with and departure from Life U can be dismissed outright.   Most

importantly, any business relationship that ultimately matured between BSI and

Life U's former employees is unrelated to Life U's Declaratory Judgment action.

For example, Dr. Carrick's decision to resign from Life U and allegedly inform

patients and doctors that he intended to open a new treatment center has nothing to

do with Life U's infringement of the '062 patent.

Second, it is wholly irrelevant and speculative that BSI allegedly interfered

with anyone's employment at Life U.  The Declaration of Mr. Bolles makes the

baseless assumption that BSI approached Dr. Carrick with a scheme to build a new

clinic and sue Life U for patent infringement, prompting Dr. Carrick's resignation.

There is no evidentiary foundation for such an unsubstantiated claim.  Indeed, Life

U admits as much – requiring the Court to "*deduce*" from circumstantial evidence

that "*possibly* as early as March 11, 2013, BSI had negotiated a partnership /

investor agreement with Dr. Carrick" and "*probably* … BSI was negotiating with

Dr. Antonucci … by May 21, 2013."  Opposition at 14-15.  Finally, Mr. Bolles'

Declaration is based-in-part on conversations that were described to him by third

parties, *see* Bolles Decl. at ¶7, which is classic hearsay, further highlighting the

need to disregard his testimony.

But regardless of these speculative assertions, the fact remains that none of

these activities gave rise to Life U's declaratory judgment claims for patent non-

infringement and patent invalidity.  Accordingly, they are irrelevant to the Georgia

long-arm analysis.

### 3.      CBC Atlanta's Address on BSI's Website

The reference to CBC Atlanta's location on BSI's website has no bearing on

the personal jurisdictional question under the Georgia long-arm statute.  On May

25, 2013, *after* the filing of Life U's Complaint, BSI's marketing company

revamped the website and, among other changes, listed for the first time the

address for the future Marietta location.  *See* Declaration of Kenneth C. Beam in

Support of Defendants' Reply in Support of Their Motion to Dismiss for Lack of

Personal Jurisdiction at ¶4.  BSI subsequently removed the Marietta address from

the website since the location was not yet open, then added the Marietta address

once the office actually opened on July 29, 2013.[2]  *Id.* at ¶6.

---

[2] On July 29, 2013, CBC Atlanta opened its treatment facility in Georgia.

Foremost, the website changes that Life U cites all occurred *after* the Complaint was filed, so they are irrelevant.  Second, the website is clearly commercial activity, and not patent enforcement activity, and thus is unrelated to the Complaint and fails to meet the "transacts business" prong of the Georgia-long arm statute.  Third, with or without the Marietta address, BSI's website remains passive and informational, *i.e.,* users cannot consummate a purchase or sale using the website.  *Id.*  As explained in BSI's moving papers, such websites cannot serve as a basis for personal jurisdiction.  BSI's Opening Brief at 3-4, 16-17.

### 4.     BSI's Two Visits to Georgia

According to Life U, the mere fact that BSI visited Georgia on two occasions somehow constitutes a "business transaction" under Georgia's long-arm statute.  Opposition at 11-12.  The first visit, in June 2012, was *before BSI owned the '062 patent,* and thus cannot possibly relate to any enforcement activity for the patent.  The second visit, when BSI hand-delivered the cease and desist letter to Life U, did not result in any business being transacted.  Life U concedes that no license or agreement occurred during this brief meeting.  *See* Opposition at 11-12.  No case stands for the proposition that merely stepping foot in this forum, without actually transacting business, satisfies the "transacting business" prong of the Georgia long-arm statute.  Instead, that prong of the Georgia long-arm statute is intended only to permit courts to exercise personal jurisdiction over parties that

*transact* business in Georgia in a matter that gives rise to the underlying declaratory judgment action.  *See, e.g., John Gallup*, 2013 U.S. Dist. LEXIS 87177, at *13.

As discussed above, to confer personal jurisdiction under Georgia's long-arm statute, the cause of action must "arise from" or be "connected with" a purposeful act in Georgia.  Life U's declaratory judgment action for non-infringement and invalidity has *no* connection with 1) the Crossfields architectural agreement, 2) Life U's former employees, or 3) CBC Atlanta's reference on BSI's website.  In addition, BSI's visits to Georgia cannot constitute business transactions because Life U admittedly refused to enter into any agreements with BSI during those visits.  This result is consistent with federal jurisprudence holding that a single visit to the forum state to deliver a cease and desist letter is insufficient to confer specific jurisdiction.  Opening Brief at 13-14; *infra* pp. 14-15.

Because the Court lacks personal jurisdiction over BSI under the Georgia long-arm statute, an inquiry into the constitutionality of exercising jurisdiction is unnecessary.

## III.  FEDERAL JURISPRUDENCE REQUIRES DISMISSAL FOR LACK OF PERSONAL JURISDICTION

In addition to Life U's failure to satisfy the Georgia long-arm statute, Life U similarly fails to satisfy Due Process requirements for personal jurisdiction.

### A.    BSI Is Not Subject to General Jurisdiction in Georgia

As the Supreme Court discussed in *Goodyear*, a defendant's contacts must be "so 'continuous and systematic' as to render them essentially at home in the forum." 131 S. Ct. at 2851 (emphasis added).  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851.  Life U disregards this rigorous standard and concedes that BSI's *only* relevant contacts with Georgia stem from BSI's limited preparations for the launch of its subsidiary, CBC Atlanta, and its delivery of a single cease and desist letter.  Given those tenuous contacts, exercising general jurisdiction would not comport with due process under *Goodyear*.

Life U pays short shrift to general jurisdiction and simply rehashes its Georgia long-arm arguments.  Aside from a *single agreement* for architectural services, Life U has not shown that BSI executed any contracts with doctors, agents, or anybody else in Georgia before the filing of this lawsuit.  Even assuming that BSI *negotiated* agreements or *solicited* potential employees or patients for a future facility, Life U cites no authority for its belief that those acts render BSI "essentially at home" in Georgia.

Life U nonetheless speculates that it might uncover evidence of additional contacts between BSI and Georgia.  But Life U offers no plausible explanation whatsoever for why or how continuous and systematic contacts with Georgia could

11

exist when BSI, a small Texas entity that has been in business for just over a year, admittedly expanded its services to this State just weeks ago.

Exercising general jurisdiction based upon BSI's maintenance of its website would also be improper because, at the time of the Complaint, it was not specifically directed to Georgia residents and did not result in any Georgia sales. *See Campbell Pet Co. v. Miale*, 542 F.3d 879, 884 (Fed. Cir. 2008) ("[Plaintiff's] reliance on the defendants' maintenance of a website is also insufficient to give rise to general jurisdiction over the defendants in the State of Washington, as the website is not directed at customers in Washington and does not appear to have generated any sales in Washington."); *Trintec Indus., Inc. v. Pedre Promotional Prods., Inc*., 395 F.3d 1275, 1281 (Fed. Cir. 2005) (defendant's website did not establish general jurisdiction in Washington because it was not specifically directed at Washington but instead was available to all customers throughout the country who have access to the internet).

Finally, Life U relies on two cases in support of its contention that general jurisdiction is appropriate here.  The first case supports BSI's position.  In *Helicopteros Nacionales de Colombia, S. A. v. Hall,* 466 U.S. 408, 418 (1984), the Supreme Court held that "mere purchases [made in the forum State], even if occurring at regular intervals, are not enough to warrant a State's assertion of

[general] jurisdiction over a nonresident corporation in a cause of action not related to those purchase transactions."  Likewise, exercising general jurisdiction over BSI in a patent action based on its contract with an architectural firm and/or purported contacts with doctors certainly cannot comport with due process.

In *Inamed Corp. v. Kuzmak,* 249 F.3d 1356 (Fed. Cir. 2001), plaintiff sued defendant seeking a declaration that defendant's patents were invalid and unenforceable, and that plaintiffs did not infringe the patents.  Previously, the parties had negotiated *multiple* licenses on the patents at issue before plaintiff terminated those licenses.  In the context of *specific* jurisdiction and due process, the allegations of patent misuse were deemed related to Defendant's licensing of the patents in the forum.  Here, of course, BSI never licensed the '062 patent to Life U in Georgia.

It remains undisputed that neither BSI nor its subsidiary CBC Atlanta operated any type of business in Georgia before Life U filed its Complaint.  In other words, BSI was not making any sales, providing any services, or paying any employees in this forum.  This is not a close case.  The aggregate effect of BSI's pre-Complaint contacts with this forum is effectively zero, and the Court cannot assert general personal jurisdiction over BSI.

**B.**      **BSI is Not Subject to Specific Jurisdiction in Georgia**

Life U glosses over the critical requirement for minimum contacts under due process: the nonresident's contacts must be *related* to the plaintiff's cause of action. *Avocent Huntsville Corp. v. Aten International Co.*, 552 F.3d 1324, 1332 (Fed. Cir. 2008). For the same reasons previously set forth concerning the Georgia long-arm statute, exercising specific jurisdiction also would not comport with due process.

Because Life U seeks declaratory relief for non-infringement and invalidity of the '062 Patent, the "specific jurisdictional" analysis must be based on BSI's enforcement activities in Georgia. *See Avocent*, 552 F.3d at 1334-35; *Atlantis Hydroponics, Inc. v. Int'l Growers Supply, Inc.*, No. 1:12-cv-1206, 2013 U.S. Dist. LEXIS 2187, at *28-29 (N.D. Ga. Jan. 3, 2013). Here, BSI's single trip to Georgia to deliver the cease and desist letter does not constitute judicial or extra-judicial patent enforcement. The Federal Circuit has confirmed that patentees may freely communicate with infringers without subjecting themselves to personal jurisdiction in a foreign forum. *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1360-61 (Fed. Cir. 1998). As to Life U's argument that BSI offered Life U a license (which grossly misstates the discussion), such discussion was done in an effort to resolve the dispute, and offering a license is "akin to an offer for settlement." *Id.*

Life U has failed to establish a *prima facie* case of personal jurisdiction over BSI because BSI's contacts with Georgia do not satisfy the Georgia long-arm statute and are too attenuated to satisfy the minimum contacts analysis.  To exercise such jurisdiction would violate BSI's rights under the Georgia long-arm statute and the Due Process Clause of the Fourteenth Amendment.

### C.   Traditional Notions of Fair Play and Substantial Justice Bolster The Justification for Dismissal

Traditional notions of fair play prevent reliance on the delivery of a cease and desist letter as the basis for specific jurisdiction.  While a cease and desist letter is an enforcement action, as a matter of law "[g]rounding personal jurisdiction on such contacts alone would not comport with principles of fairness." *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc*., 148 F.3d 1355, 1361 (Fed. Cir. 1998) (citation omitted).

## IV.   CONCLUSION

Georgia's long-arm statute does not confer jurisdiction over BSI, and the Due Process Clause of the Fourteenth Amendment prohibits the exercise of such jurisdiction.  BSI's motion to dismiss for lack of personal jurisdiction should be granted.

Respectfully submitted, this 22nd day of August, 2013.

/s/ Timothy P. Getzoff
Timothy P. Getzoff  (Admitted *pro hac vice*)
Mher Hartoonian (Admitted *pro hac vice*)
HOLLAND & HART LLP
555 Seventeenth Street, Suite 3200
Denver, Colorado 80202
Telephone: (303) 295-8000
Fax: (303) 295-8261

/s/ William M. Ragland, Jr.
William M. Ragland, Jr.
Georgia Bar No. 591888
Preston H. Heard
Georgia Bar No. 476319
WOMBLE CARLYLE SANDRIDGE & RICE LLP
271 17th Street, NW, Suite 2400
Atlanta, Georgia 30363-1017
Telephone: (404) 872-7000
Fax: (404) 888-7490

*Attorneys for Defendants Brain Synergy
Institute, LLC, KBCR, LLC, and Carrick
Brain Centers*

## LOCAL RULE 7.1(D) CERTIFICATION

Undersigned counsel hereby certifies that the foregoing document has been prepared in Times New Roman 14 pt., which is one of the font and point selections approved by the Court under Local Rule 5.1(B).

## CERTIFICATE OF SERVICE

I hereby certify that on August 22, 2013, I caused a true and correct copy of **DEFENDANTS' REPLY IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION** to be filed via the Court's ECF system which will send notice to counsel of record.


/s/ Timothy P Getzoff.
Timothy P. Getzoff

6356229_1