IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

LIFE UNIVERSITY, INC., :
:
    Plaintiff, :
: CIVIL ACTION NO.
v. : 1:13-cv-1741-SCJ
:
BRAIN SYNERGY INSTITUTE, :
LLC, KBCR, LLC, and CARRICK :
BRAIN CENTERS, :
:
    Defendants. :

## ORDER

This matter appears before the Court on the Defendants' Motion to Dismiss for Lack of Personal Jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) [Doc. No. 8].

## I. Background

On May 23, 2013, Plaintiff, Life University, Inc. ("Plaintiff") brought this Declaratory Judgment Complaint against Defendants Brain Synergy Institute, LLC (hereinafter "BSI"), KBCR, LLC, and Carrick Brain Centers (hereafter collectively referred to as "Defendants"). Doc. No. 1.[1] By this lawsuit, Plaintiff seeks a declaratory

---

[1] Defendants have filed a declaration that Brain Synergy Institute, LLC ("BSI"), is a Texas limited liability company, original formed under the name KBCR, LLC, but changed to BSI on June 29, 2012 and that "Carrick Brain Centers" was registered with the State of Texas as a d/b/a for BSI on May 1, 2013. Doc. No. 8-3, p. 2, ¶ 3.

judgment that its use of the GyroStim™ multi-axis rotating chair does not infringe any valid or enforceable claim of U.S. Patent No. 6,800,062 (entitled "Comprehensive Vertigo Management") that Defendant BSI claims to own. Id. at ¶ 5. Plaintiff also seeks invalidity of said patent. Id. at ¶ 32.

On July 19, 2013, Defendants filed a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. Doc. No. 8. Defendants state that they have insufficient contacts with the state of Georgia. Doc. No. 8-1, p. 6. After the filing of said motion, the Court allowed jurisdictional discovery [Doc. No. 20] and permitted additional briefing.[2] This matter is now ripe for review.

## II. Legal Standard

Federal Circuit law governs jurisdictional matters in patent infringement cases. Beverly Hills Fans Co. v. Royal Sovereign Corp., 21 F.3d 1558, 1564–65 (Fed. Cir. 1994). To determine whether personal jurisdiction exists, the court conducts a two-part inquiry: (1) whether the defendant is "amenable to service of process," and (2) whether the exercise of jurisdiction over the defendant is consistent with federal due process. Patent Rights Protect. Grp, LLC v. Video Gaming Tech., 603 F.3d 1364, 1368–69 (Fed. Cir. 2010). The answer to the first inquiry, "often entails considering whether the defendant 'is subject to the jurisdiction of a court of general jurisdiction

---

[2] The amended briefs supersede the original briefs filed on this motion. Doc. No. 20.

in the state where the district court is located,' This, in turn, involves examining the state's long-arm statute." Id.; Silent Drive, Inc. v. Strong Indus., Inc., 326 F.3d 1194, 1200 (Fed. Cir. 2003) ("The test for whether specific personal jurisdiction exists has two steps. First, we look to the state long-arm statute and see whether it is satisfied."). As this Court sits in Georgia, the applicable long-arm statute is Georgia's Long-Arm statute, O.C.G.A. § 9-10-91. To answer the second inquiry, the court determines whether the defendant has "certain minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. State of Washington, 326 U.S. 310, 316 (1945). Accordingly, a court's exercise of personal jurisdiction over a nonresident defendant in Georgia is proper only where the independent requirements of both the long-arm statute and federal due process are satisfied.

"Where, as here, the district court [does] not hold an evidentiary hearing, a plaintiff need only make a prima facie showing of jurisdiction to survive the motion to dismiss." Campbell Pet Co. v. Miale, 542 F.3d 879, 888 (Fed. Cir. 2008). "To make that showing, [plaintiff] need only demonstrate facts that, if true, would support jurisdiction over the [d]efendants." Id. "Unless directly contravened, [plaintiff's] version of the facts is taken as true, and conflicts between the facts contained in

3

declarations submitted by the two sides must be resolved in [plaintiff's] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists." Id.

### III. Analysis

Georgia's Long-Arm statute, O.C.G.A. § 9-10-91, provides in relevant part:

> A court of this state may exercise personal jurisdiction over any nonresident . . . as to a cause of action arising from any of the acts, omissions, ownership, use, or possession enumerated in this Code section, in the same manner as if he were a resident of the state, if in person or through an agent, he:
>
> (1) Transacts any business within this state . . . .[3]

O.C.G.A. § 9-10-91(1).

"When a federal court uses a state long-arm statute, because the extent of the statute is governed by state law, the federal court is required to construe it as would the state's supreme court." Lockard v. Equifax, Inc., 163 F.3d 1259, 1265 (11th Cir. 1998). The Georgia Supreme Court has held that the above-stated subsection (1) of its Long Arm statute "is limited by due process considerations," and accordingly, Georgia courts apply a three-part test in considering whether a Georgia court may exercise jurisdiction over a nonresident based on the transaction of business:

---

[3] There are additional parts to the statute; however, both parties appear to agree that the "transacts any business" section of the Georgia Long-Arm statute is the section at issue, here. Doc. Nos. 8-1, p. 23; 22, p. 7.

4

> Jurisdiction exists on the basis of transacting business in this state if (1) the nonresident defendant has purposefully done some act or consummated some transaction in this state, (2) if the cause of action arises from or is connected with such act or transaction, and (3) if the exercise of jurisdiction by the courts of this state does not offend traditional fairness and substantial justice.

Amerireach.com, LLC v. Walker, 290 Ga. 261, 269, 719 S.E.2d 489, 496 (2011).

"Georgia courts have yet to fully explain the scope of the '[t]ransacts any business within this state' language." Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc., 593 F.3d 1249, 1262 (11th Cir. 2010). "Ultimately, unless and until the Georgia courts provide further authoritative guidance, courts in this circuit construing the statute literally will have to delineate the precise contours of the '[t]ransacts any business within this state' requirement of O.C.G.A. § 9-10-91(1) according to the facts of each case." Id. at 1263. "Interpreted literally, 'transacts any business' requires that the 'nonresident defendant has purposefully done some act or consummated some transaction in [Georgia] . . . .'" Id. at 1264.[4] Tangible and intangible conduct (such as mail, telephone calls, and other acts) must be examined

---

[4] "In conducting this mixed law and fact inquiry, [the Eleventh Circuit has looked to dictionary sources and found] instructive the literal definition of the words in the statute. 'Transact' means 'to prosecute negotiations,' 'to carry on business,' 'to carry out,' or 'to carry on.' 'Any' means 'to any extent' or 'in any degree.' 'Business' means 'activity directed toward some end,' or 'a usually commercial or mercantile activity customarily engaged in as a means of livelihood,' or 'transactions, dealings, or intercourse of any nature.'" Diamond Crystal, 593 F.3d at 1265 n.18 (internal citations omitted).

5

to determine if a nonresident has transacted any business within Georgia. Id. at 1264. A defendant need not physically enter the state to transact business in Georgia. Id.; see also Crossing Park Props., LLC v. JDI Fort Lauderdale, LLC, 316 Ga. App. 471, 475–76, 729 S.E.2d 605, 609 (2012) ("'[a] single event may be a sufficient basis if its effects within the forum are substantial enough.'"); John Gallup & Assoc., LLC v. Conlow, No. 1:12-cv-03779; 2013 WL 3191005, at * 5 (N.D. Ga. Jun. 21, 2013) ("The defendant, however, must 'fairly be said' to have literally 'transacted' business in Georgia.").

In the case *sub judice*, Plaintiff argues that Defendants transacted business in Georgia (specifically related to its enforcement actions leading to the filing of Plaintiff's suit) through *at least* the following: (i) contracting to utilize airspace in Georgia to serve the demand letter; (ii) contracting to utilize a rental car to serve the demand letter; (iii) contracting to book a hotel to serve the demand letter; and (iv) negotiating terms of a license agreement with Plaintiff after delivering the demand letter. Doc. No. 22, p. 10.[5]

---

[5] Defendants do not acknowledge that there were negotiations, but instead state that there was a "brief dialogue between the parties" that was not a formal licensing effort and is "akin to an offer for settlement." Doc. No. 23, p. 15. For purposes of this order only and in accordance with the above-stated standard, the Court will resolve the differing interpretations of the meeting in Plaintiff's favor, as negotiations.

The first ground of Plaintiff's argument is easily disposed of, as Plaintiff's evidence shows that Mr. Michael Budagher, Defendant BSI's founding member, flew his own plane into Georgia for the meeting with Life University and Mr. Budagher did not testify that he contracted to utilize airspace. Budagher Depo. 139:8-16.

As to the next two grounds (*i.e.*, rental of a car and booking a hotel to serve the demand letter), even if these acts were to constitute transacting business in Georgia, they do not meet the second prong of the above-stated three-part test in that the cause of action (*i.e.*, a declaratory judgment action seeking non-infringement and invalidity of the patent) does not arise from, nor is it connected with renting a car and booking a hotel to deliver a demand letter.[6] The Court finds that a connection, *if any*, would be the demand letter, not the tangential acts associated with the service of the letter on Plaintiff. Moreover, Plaintiff has also not cited any case in which the Georgia courts have considered conduct under circumstances similar to the present case to constitute transacting business within the Georgia Long-Arm statute.

As to the fourth and final ground (*i.e.*, negotiating the terms of a license agreement), Plaintiff argues that the offer by Defendant BSI to settle its claims of

---

[6] The Court recognizes Plaintiff's argument that the Defendants' business in the state of Georgia need not be related to the cause of action; however, as stated above, a federal court construes the statute as would the state's supreme court and the Supreme Court of Georgia has added a three-part test to the consideration. Said test takes into account whether the cause of action arises from or is connected with such act or transaction. Accordingly, this Court will follow the state court's construction of the statute and declines to uphold Plaintiff's arguments to the contrary.

AO 72A
(Rev.8/82)

patent infringement of the GyroStim device constitutes "extra-judicial patent enforcement" and satisfies the "transacts any business" prong of Georgia's Long-Arm statute. Doc. No. 22, pp. 10, 29.[7] Plaintiff has not set forth evidence showing that a license or agreement transpired during these negotiations.

The Federal Circuit has stated that "beyond the sending of an infringement letter, '[o]ther activities are required in order for a patentee to be subject to personal jurisdiction in the forum.'" Inamed Corp. v. Kuzmak, 249 F.3d 1356, 1361 (Fed. Cir. 2001); see also Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc., 148 F.3d 1355, 1361 (Fed. Cir. 1998) (holding that cease-and-desist letters sent by the declaratory judgment defendant were insufficient contacts to create personal jurisdiction). "Examples of these 'other activities' include initiating judicial or extra-judicial patent enforcement within the forum, or entering into an exclusive license agreement or

---

[7] In support of their argument, Plaintiff cites the Eleventh Circuit's opinion in Diamond Crystal in which the Court found "instructive the literal definition of the words in the statute" and noted that to "transact" means "to prosecute negotiations." Diamond Crystal, 593 F.3d at 1264 n.18. As stated above, Federal Circuit law governs jurisdictional matters in patent infringement cases. Beverly Hills Fans Co. v. Royal Sovereign Corp., 21 F.3d 1558, 1564–65 (Fed. Cir. 1994). To the extent that it is proper to consider the Eleventh Circuit's opinion, this Court will also consider the Eleventh Circuit's definition of the word "business" as meaning "activity directed toward some end." 593 F.3d at 1261 n.18. Here, nothing came of the negotiations, so applying the literal definitions, it cannot necessarily be said that there was a prosecution of negotiations directed toward some end. In addition, Plaintiff has failed to cite to a Georgia or Eleventh Circuit case that holds that negotiations, without a future course of conduct or an executed contract, constituted transacting business under the Georgia Long-Arm statute. See e.g., Genesis Research Inst., Inc. v. Roxbury Press, Inc., 247 Ga. App. 744 (2000) (holding that negotiations constituted transacting business within the meaning of the Georgia Long-Arm statute where facts showed that in-state negotiations led to the execution and completion of a purchase order).

other undertaking which imposes enforcement obligations with a party residing or regularly doing business in the forum." Avocent Huntsville Corp. v. Aten Intern. Co., Ltd., 552 F.3d 1324, 1334 (Fed. Cir. 2008).

The Court finds guidance in the case of Inamed Corp. v. Kuzmak, 249 F.3d 1356, 1361 (Fed. Cir. 2001) in which the Federal Circuit addressed personal jurisdiction and cited its prior case Akro Corp. v. Luker, 45 F.3d 1541, 1548 (Fed. Cir. 1995). The Federal Circuit set forth the following parenthetical concerning the language in Akro: "[W]arning letters from and negotiations for a license with an out-of-state patentee cannot, without more, support personal jurisdiction in an action for a declaratory judgment of patent invalidity and noninfringement."[8] Inamed, 249 F.3d at 1361; cf. J. Stephen Scherer, Inc. v. Revelations Antoine Ltee, 845 F.2d 1033 (Fed. Cir. 1988) (unpublished opinion)[9] ("Plaintiffs next point to three meetings in Michigan which were attended by [defendant's representatives] in an effort to negotiate a license for [plaintiff] under the '891 patent. Plaintiffs' position is that these meetings constitute a transaction of business. Nothing came of the negotiations,

---

[8] A review of the Akro case shows that the quoted language was a defense argument that the Federal Circuit recognized as a "particular point". . ."however accurately described." Akro, 45 F.3d at 1548.

[9] While the opinion is unpublished and accordingly non-binding, this Court finds that the opinion provides guidance and persuasive reasoning. See Fed. Cir. Rule 32.1 ("The court may refer to a nonprecedential disposition in an opinion or order and may look to a nonprecedential disposition for guidance or persuasive reasoning, but will not give one of its own nonprecedential dispositions the effect of binding precedent.").

however, and plaintiffs have not cited any authority to support the doubtful proposition that mere negotiations can amount to a transaction of business. In summary, plaintiffs have not alleged conduct sufficient to satisfy the transacting business provision of the Michigan long arm statute.").

After consideration, the Court finds that mere negotiations (without a future course of conduct or executed agreement) do not support personal jurisdiction under the Georgia Long-Arm statute's transacting business section.

In summary, the Court finds that Defendants are not subject to personal jurisdiction under the Georgia Long-Arm statute. It is, therefore, unnecessary to proceed to step two of the analysis and determine whether personal jurisdiction would comport with federal due process. See Diamond Crystal, 593 F.3d at 1259 ("[t]he [Georgia] long-arm statute . . . imposes independent obligations that a plaintiff must establish for the exercise of personal jurisdiction that are distinct from the demands of procedural due process.").

## Conclusion

Defendants' Motion to Dismiss for Lack of Personal Jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) [Doc. No. 8] is hereby **GRANTED**.

The pending Motion to Intervene filed by Ultrathera Technologies, Inc. and Kevin Maher's [Doc. No. 7] is hereby **DENIED as MOOT**.

AO 72A
(Rev.8/82)

Nothing further remaining for the Court's consideration, the Clerk is **DIRECTED** to close this case.

IT IS SO ORDERED, this 7th day of February, 2014.

_____
HONORABLE STEVE C. JONES
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)